IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> TUPETAIKI M. LEGER, individually and d/b/a FALEKAI TONGA RESTAURANT, <br><br> Defendant. | Case No. 13-cv-02071-SC <br><br> ORDER GRANTING APPLICATION FOR DEFAULT JUDGMENT |

## I. INTRODUCTION

Plaintiff J & J Sports Productions, Inc. ("Plaintiff") seeks entry of Default Judgment against Defendant Tupetaiki M. Leger ("Defendant"). ECF No. 13 ("App. for Default J."). Plaintiff's application is unopposed, and the Court finds the matter suitable for determination without oral argument pursuant to Civil Local Rule 7-1(b). Having considered the papers submitted, the Court concludes that entry of Default Judgment against Defendant is appropriate, and GRANTS Plaintiff's Application.

## II. BACKGROUND

The following allegations are taken from Plaintiff's Complaint. Plaintiff is a California corporation with its principal place of business in Campbell, California. ECF No. 1 ("Compl.") ¶ 1. Defendant is the owner and operator of Falekai Tonga Restaurant (the "Restaurant"), which is located in the city of San Bruno, California. Id. ¶ 2.

Plaintiff was granted the exclusive nationwide commercial distribution rights to Floyd Mayweather Jr. v. Miguel Cotto, WBA Super World Light Middleweight Championship Program (the "Program"), telecast nationwide on Saturday, May 5, 2012. Id. ¶ 14. Plaintiff entered into sublicensing agreements that gave commercial establishments in the hospitality industry the right to publicly exhibit the program. Id. ¶ 15.

Plaintiff alleges that Defendant willfully and unlawfully intercepted and exhibited the Program at the time of its transmission at the Restaurant. Id. ¶ 11. Plaintiff further alleges that the unlawful broadcast resulted in increased profits for the Restaurant. Id. ¶ 12.

Additional facts are set forth in the affidavit of an investigator, Yolanda Poblete ("Poblete"), which is attached to Plaintiff's Application for Default Judgment. ECF No. 13-2 ("Poblete Decl."). Poblete states that she entered the Restaurant on the evening of the Program and was not charged a cover. Id. at 1. At that time, she observed the Program broadcast on a thirty-eight-inch flat-screen television located in the Restaurant. Id. Poblete remained in the Restaurant for about thirteen minutes, and during that time she counted seven to eight patrons in the

establishment. Id. at 1-2. According to Poblete, the Restaurant had a seating capacity of over forty-five. Id. at 2.

Plaintiff asserts causes of action for violations of 47 U.S.C. § 605 (the "Communications Act"), which prohibits unauthorized publication or use of wire or radio transmissions; 47 U.S.C. § 553, which prohibits unauthorized reception of cable service; common law conversion; and violation of California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq. Defendant failed to answer the Complaint or otherwise enter an appearance, and the Clerk entered Default. ECF No. 12.

**III. LEGAL STANDARD**

After entry of a default, the Court may enter a default judgment. Fed. R. Civ. P. 55(b)(2). Its decision whether to do so, while discretionary, is guided by several factors. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). As a preliminary matter, the Court must "assess the adequacy of the service of process on the party against whom default is requested." Bd. of Trs. of the N. Cal. Sheet Metal Workers v. Peters, No. 00-0395, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001). If the Court determines that service was sufficient, it should consider whether the following factors support the entry of default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions

on the merits. <u>Eitel v. McCool</u>, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." <u>Geddes v. United Fin. Grp.</u>, 559 F.2d 557, 560 (9th Cir. 1977). "However, necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." <u>Cripps v. Life Ins. Co.</u>, 980 F.2d 1261, 1267 (9th Cir. 1992).

**IV. DISCUSSION**

    **A. Service of Process**

Before the Court may consider whether to exercise its discretion to enter default judgment, it must be satisfied that the procedural prerequisites, including adequate service of process, have been met. <u>See, e.g.</u>, <u>PepsiCo, Inc. v. Cal. Sec. Cans</u>, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002). Federal Rule of Civil Procedure 4(e)(2)(A) provides that an individual may be served by delivering a copy of the summons and complaint to the individual personally. Here, copies of the summons and Complaint were personally delivered to Defendant at the Restaurant on May 22, 2013. ECF No. 8 ("Proof of Service"). Accordingly, the Court finds that service of process was adequate.

    **B. Eitel Factors**

Since service of process was proper, the Court next turns to the <u>Eitel</u> factors to determine whether default judgment is appropriate. The Court finds that the <u>Eitel</u> factors favor default judgment here.

4

The first factor considers the possibility of prejudice against Plaintiff if default judgment is not entered. The Court finds that because Plaintiff may be without recourse for recovery if default judgment is not entered, this factor weighs in favor of default judgment. See PepsiCo, 238 F. Supp. 2d at 1177.

The second and third Eitel factors require that a plaintiff's allegations state a claim upon which it can recover. Plaintiff has requested default judgment on its claims for violations of the Communications Act and common law conversion. Plaintiff appears to have abandoned its claims for violations of 47 U.S.C. § 553 and the UCL.

The Communications Act provides, in pertinent part, that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect or meaning of such intercepted communication to any person." 47 U.S.C. § 605(a). The Communications Act provides a private right of action to persons "aggrieved" by violations of the act. Id. § 605(e)(3)(A). A "person aggrieved" includes a party "with proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite cable programming." Id. § 605(d)(6). Here, Plaintiff alleges that it had exclusive commercial licensing rights for the Program. Thus, Plaintiff is an aggrieved person for purposes of the statute. Plaintiff further alleges that Defendant was not authorized to intercept and exhibit the Program, yet did so. Accordingly, the Court finds that Plaintiff has made out a prima facie case for violation of the Communications Act.

5

"Under California law, conversion has three elements: (1) ownership or right to possession of property; (2) wrongful disposition of the property right of another; and (3) damages." J & J Sports Prods. v. Coyne, 857 F. Supp. 2d 909, 918 (N.D. Cal. 2012). "Although conversion generally applies to tangible property, recent court decisions have recognized intangible property such as the exclusive distribution rights over a program may be capable of being converted." Id. In this case, Plaintiff has alleged its ownership over the commercial distribution rights to the Program and that Defendant showed the Program at his establishment in contravention of Plaintiff's exclusive commercial distribution rights. Further, Plaintiff has alleged damages, in the form of the commercial license fee that Defendants should have paid. Plaintiff therefore makes out a prima facie case of conversion.

As to the fourth Eitel factor, the Court must consider "the amount of money at stake in relation to the seriousness of defendant's conduct." N. Cal. Sheet Metal Workers, 2000 U.S. Dist. LEXIS 19065, at *4-5. "The Court considers Plaintiff's declarations, calculations, and other documentation of damages in determining if the amount at stake is reasonable." Truong Giang Corp. v. Twinstar Tea Corp., No. 06-CV-03594, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007). Plaintiff now seeks $112,200 in damages. This would probably be a substantial burden on Defendant, and requests for such large sums of money generally counsel against entry of default judgment. Eitel, 782 F.2d at 1472. However, as discussed below, the Court adjusts Plaintiff's requested damages to an appropriate amount based on the evidence in the record.

1    The Court finds that the remaining Eitel factors also favor
2 entry of default judgment. The material facts of this case are not
3 reasonably likely to be subject to dispute, and there is no support
4 for finding that Defendant's default is due to excusable neglect.
5 Defendant was served with the Complaint and summons in this action
6 over six month ago and has yet to enter an appearance. Moreover,
7 while "[c]ases should be decided upon their merits whenever
8 reasonably possible," Eitel, 782 F.3d at 1472, "Defendant's failure
9 to answer Plaintiff['s] Complaint makes a decision on the merits
10 impractical if not impossible, PepsiCo, 238 F. Supp. 2d at 1177.

**C.    Remedies**

    **i.    The Communications Act**

Under the Communications Act, a party may choose to recover either actual or statutory damages. 47 U.S.C. § 605(e)(3)(C)(i). Plaintiff has elected to pursue statutory damages. App. for Default J. at 9. Statutory damages may be awarded for each violation "in a sum of not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). Plaintiff seeks $10,000 in statutory damages.

"In determining the appropriate amount of statutory damages, the court may consider the cost of the commercial license to exhibit the program at issue, the defendant's incremental profit from the use of the program, the number of patrons at the establishment[,] and the need to deter piracy." J & J Sports Prods., Inc. v. Lopez, C 12-5784 SBA, 2013 WL 6091618, at *2 (N.D. Cal. Nov. 19, 2013). In this case, the actual cost to exhibit the Program is merely $2,200. Moreover, there is no indication that Defendant generated an incremental profit from exhibiting the

7

1 Program, since he did not charge a cover and the Restaurant, which
2 has a seating capacity of forty-five, only had seven to eight
3 patrons on the night in question. Taking into account these
4 factors, along with the goal of furthering deterrence, and
5 considering that this is Defendant's first violation, the Court
6 finds that the appropriate statutory damage award is $2,200.

7 The statute also provides for enhanced damages in the amount
8 of up to $100,000 per violation if "the court finds that the
9 violation was committed willfully and for purposes of direct or
10 indirect commercial advantage or private financial gain." 47
11 U.S.C. § 605(e)(3)(C)(ii). Plaintiff requests that the Court
12 impose the maximum allowable amount of enhanced damages. That
13 request is denied. The Court finds that enhanced damages are
14 inappropriate here since there is no indication that Defendant
15 screened the Program for commercial advantage or private financial
16 gain. As discussed above, Defendant required no cover charge to
17 enter the Restaurant on the night in question, and the Restaurant
18 was practically empty during the Program. Moreover, there is no
19 claim that Defendant ever advertised or promoted the exhibition of
20 the Program.

21 Accordingly, the Court awards Plaintiff $2,200 in statutory
22 damages.

### ii. Conversion

24 The damages for conversion are the value of the property at
25 the time of the conversion and compensation for the time and money
26 properly expended in pursuit of the converted property. Cal. Civ.
27 Code § 3336. Plaintiff seeks $2,200 in damages based on the cost
28 of the license that Defendant would have otherwise been required to

8

pay for the Program. The Court finds that no such damages should be awarded since Plaintiff is already being compensated for the cost of the license through the statutory damage award under the Communications Act.

## V. CONCLUSION

For the reasons discussed above, Plaintiff's Application for Default Judgment is GRANTED. Judgment shall be entered in favor of Plaintiff J & J Sports Productions, Inc. and against Defendant Tupetaiki M. Leger, doing business as Falekai Tonga Restaurant, in the amount of $2,200.

IT IS SO ORDERED.

December 10, 2013

UNITED STATES DISTRICT JUDGE